### UNITED STATES v. OLAECHEA.

(District Court, D. Nevada. October 8, 1923.)

No. B–83.

1. Aliens ⊙68—Naturalization must be in strict compliance with law.

An alien can acquire American citizenship only by strict compliance with the terms and procedure prescribed by law.

2. Aliens ⊙71½—Certificate of citizenship held subject to cancellation as "illegally procured" when court or its appointee made preliminary examination.

A court is without authority to act as a representative of the Bureau of Naturalization in making preliminary examination of an applicant for citizenship under the requirement of Naturalization Act June 29, 1906, § 4, subd. 2, as amended by Act June 25, 1910, § 3 (Comp. St. § 4352), to appoint a person to make such examination, and a certificate of citizenship granted on an examination so made is illegally procured, and subject to cancellation, under section 15 of Naturalization Act June 29, 1906 (Comp. St. § 4374).

In Equity. Suit by the United States against Jose Manuel Olaechea, for cancellation of certificate of citizenship. Decree of cancellation.

George Springmeyer, U. S. Atty., of Reno, Nev., and M. R. Bevington, Chief Naturalization Examiner, of San Francisco, Cal., for the United States.

G. F. Boreman, of Ely, Nev., for defendant.

FARRINGTON, District Judge. This suit was brought to obtain a decree setting aside a judgment of the district court of the Ninth judicial district of the state of Nevada, in and for the county of White Pine, rendered March 18, 1923, admitting Jose Manuel Olaechea to citizenship. The ground on which this relief is sought is that prior to hearing in the state court defendant did not appear with his two witnesses before the appropriate representative of the Bureau of Naturalization, and pass the preliminary examination as required; consequently no record of any such examination was offered in evidence and made a part of the record at the original hearing on defendant's petition for naturalization.

After serving with credit in the American Expeditionary Forces in France during the late war, the defendant was discharged in October, 1918, on the ground of his Spanish citizenship. He contends that this was accomplished without his knowledge, procurement, or consent, through the efforts of his brother and the Spanish Embassy at Washington, and further alleges that on January 18, 1922, he received a letter from the chief naturalization examiner at San Francisco, informing him that if he desired he could file a petition for naturalization under the Act of July 19, 1919 (41 Stat. 222), at Ely, Nev., and that on the 17th day of March, 1922, an examiner of the naturalization office would be in the county clerk's office at Ely to make the preliminary examination required. He was further informed that aliens honorably discharged from the military service could, after passing the preliminary examination required by law before a United States naturalization examiner, file a petition in any court authorized to naturalize aliens; that he should produce as witnesses two citizens of the United States able to identify him as the person named in his discharge certificate, and, if found eligible, he might be naturalized immediately. This letter was followed by another of similar import from the same office, dated February 17, 1922. On the 16th day of March, H. B. Terrill, a United States naturalization examiner, arrived at Cobre on his way to Ely; there he wired the county clerk that suspension of train service prevented his attendance at the naturalization hearing on the 17th, and requested Judge McFadden to proceed with cases which might be legally heard, subject to the information that preliminary investigation disclosed nothing adverse to certain petitioners. He requested also dismissal or continuance of a number of petitions, and careful examination as to others, but Olaechea was not mentioned. On the following day the court designated the district attorney of White Pine county, Charles A. Walker, to act as naturalization examiner. On the 18th defendant appeared in open court with his two witnesses for preliminary examination. After all three were sworn and examined it was ordered by the court that de-

fendant be permitted to file a petition for naturalization, and later on the same day he was admitted to citizenship, and a certificate of naturalization issued to him.

Jurisdiction is clearly conferred on this court by section 15 of the Act of June 29, 1906, to cancel a certificate of citizenship on the ground that it was issued fraudulently or procured illegally in the state court.

[1] Naturalization is not a right; it is granted on such conditions as the United States sees fit to impose. An alien can acquire American citizenship only by strict compliance with the terms and procedure prescribed by law. United States v. Ginsberg, 243 U. S. 472, 475, 37 Sup. Ct. 422, 61 L. Ed. 853. The requirement that the applicant prior to filing his petition in court must appear with his two witnesses before the appropriate representative of the Bureau of Naturalization and pass a preliminary examination was wisely conceived. It was considered that such an examination conducted by an officer specially trained for that service would insure a careful, thorough, and economical investigation of the eligibility and fitness of the applicant for American citizenship, and the subsequent hearing in open court would afford ample opportunity to test and correct the conclusions of the examiner.

[2] The statute does not contemplate that the court may perform the duties of a naturalization examiner, or that such an examiner may admit an alien to citizenship. To allow a court to exercise the functions of a naturalization examiner is simply to relapse to the loose and unsatisfactory procedure which prevailed before the enactment of the present naturalization law. The court had no jurisdiction either to hold the preliminary examination or to depute the district attorney to do so.

That a most essential step in the procedure leading up to the order admitting Olaechea to citizenship was omitted is clear. His certificate of examination was illegally procured within the meaning of section 15 of the act of June 29, 1906, 34 St. at L. 601 (Comp. St. § 4374). To hold otherwise is to hold that it is within the power of the courts having jurisdiction to naturalize aliens to nullify one of the most excellent features of the present naturalization law.

In United States v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321, it was held that naturalization was illegally procured because the petitioner failed to file with the clerk the certificate of the Department of Commerce and Labor required by the last paragraph of subdivision 2 of section 4 of the Act of June 29, 1906, as amended June 25, 1910 (U. S. Comp. St. § 4352).

The final hearing of a naturalization case in chambers rather than in open court, as required in section 9, was held not to satisfy the statute in United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853.

The frequent charges of fraud and gross fraud contained in the briefs filed on behalf of the government are gratuitous and unworthy. The examiner, on arriving at Cobre, a station on the Southern Pacific north of Ely, found that train service on the local road was suspended, but no attempt is made to excuse his failure to go to Ely on the 16th

or 17th by private conveyance. Had he done so this litigation probably would not have arisen.

The admission of defendant to citizenship made by the state court for White Pine county must be set aside and canceled. Costs will not be awarded against the defendant.

Let a decree be entered in accordance with the foregoing opinion.